UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES SCHUSTER,

    Plaintiff,

v.

                      CASE NO.:

TWILIO, INC.,

    Defendant.
_____/

## COMPLAINT

1. In 1991, Congress enacted the TCPA because of the abuses of automatic telephone dialers.

2. Today, this scourge has become even worse than anyone ever imagined in 1991.

3. In May of 2019, Americans were bombarded with a shocking 5.2 *billion* robocalls —an increase by an incredible 370% just since December 2015.[1]

4. In 2015, 2,125,968 complained to the Federal Trade Commission (FTC) and Federal Communications Commission (FCC), in 2016 this number was 3,401,614 and in 2017 it was 4,501,967.[2]

5. Twilio, Inc. sent automated text messages ("robotexted" or "robocalled") to the Plaintiff a mindboggling 1,030 times.

6. Twilio, Inc. has a corporate policy to robocall people thousands of times.

7. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force

---

[1] YouMail Robocall Index, available at http://RobocallIndex.com/
[2] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by illegal robocalling abuse could be close to 100,000,000 in the last 3 years

the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

8. Plaintiff, James Schuster, alleges Defendant, Twilio, Inc., robotexted her more than 1030 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

9. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

10. The TCPA was enacted to prevent companies like Twilio, Inc. from invading American citizens' privacy and prevent illegal robocalls.

11. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

12. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

13. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

14. Violations described in the Complaint occurred while Plaintiff was in Tampa, FL.

## FACTUAL ALLEGATIONS

15. Plaintiff is a natural person and citizen of the State of FL, residing in Tampa, FL.

16. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

17. Defendant is Corporation with its principal place of business in San Francisco, California and conducts business in the State of Florida.

18. Twilio, Inc. is a cloud-based communications company which uses cloud software that is capable of sending billions of SMS messages to automatically send text messages to anyone on a mobile phone.

19. Defendant, Twilio, sells their software products to large entities who share the intent of phone call and text messaging campaigns.

20. Twilio, Inc. is responsible for programming, initiating, and even creating text messages that can be sent at masses on behalf of their customers. Twilio is also capable of using programs to generate lists of numbers to be dialed for their clients.

21. In or around July of 2016, Plaintiff received one and only one ride from Uber Technologies, Inc. ("Uber").

22. More than one year later, Plaintiff fell victim to an explosion of text messages from December of 2017 to July of 2018, Plaintiff received over 1,036 text messages. Based upon investigation, it appears Twilio made these text messages.

23. Plaintiff replied back "stop" shortly after the text messages began. Plaintiff sent several texts asking for the robotext campaign to stop. Plaintiff received 1,009 text messages after Plaintiff first asked Defendant to stop.

24. Twilio's technology is used to send text messages and other communications to customers.

25. Defendant, Twilio, makes a lot of money making these text messages.

26. These text messages are representative of the millions of text messages that Defendant is capable of making to many thousands of different cellular telephone numbers.

27. Twilio allows their platform to be used to illegally text-blast.

28. Twilio controls when and how each of the text messages are delivered to the cellular telephone numbers. Defendant, Twilio, acted as an agent in enabling, facilitating, initiating, and making the text message transmissions to Plaintiff's cellular telephone.

29. Defendant knowingly allows the illegal text messages.

30. The mass campaign of text messages Uber sent to Plaintiff could not have worked without the knowledge, authorization, and approval of Defendant Twilio.

31. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (813) 210-4417.

32. Plaintiff was the "called party" during each phone call subject to this lawsuit.

33. Twilio controlled all of the "making" of the text messages to Plaintiff.

34. Defendant profits on a large scale by intentionally harassing and abusing people like Plaintiff by selling software that is designed for the purpose of programming, initiating, and even creating text messages that can be sent at masses on behalf of their customers.

35. Defendant intentionally harassed and abused Plaintiff on numerous occasions by texting several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

36. Defendant did not have the "express consent" of the Defendant to call his cell phone.

37. "Express consent" is narrowly construed by the Courts.

38. It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on her cell phone using an "automatic telephone dialing system" (ATDS).

39. It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an ATDS for each account they were calling on.

40. Defendant was put on notice Plaintiff did not want the Defendant contacting him.

41. Defendant was told repeatedly by Plaintiff to stop sending robotext messages.[3]

42. Defendant did not have the express consent of the Plaintiff to text him on the accounts they sent text messages on.

---

[3] Defendant should have the call logs showing the exact number of calls and the recordings which should illustrate exactly what was said to the Defendant.

43. Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

44. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

45. Defendant made at least one text to (813) 210-4417.

46. Defendant made at least one text to (813) 210-4417 using an ATDS.

47. Defendant made at least ten (10) texts to (813) 210-4417.

48. Defendant made at least ten (10) texts to (813) 210-4417 using an ATDS.

49. Defendant made at least one hundred (100) texts to (813) 210-4417.

50. Defendant made at least one hundred (100) texts to (813) 210-4417 using an ATDS.

51. Defendant made at least five hundred (500) texts to (813) 210-4417.

52. Defendant made at least five hundred (500) texts to (813) 210-4417 using an ATDS.

53. Defendant made at least one thousand (1,000) texts to (813) 210-4417.

54. Defendant made at least one thousand (1,000) texts to (813) 210-4417 using an ATDS.

55. Each text the Defendant sent to (813) 210-4417 in the last four years was made using an ATDS.

56. Each text the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

57. Defendant has texted other people's cell phones without their express consent.

58. Each text the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called or texted, without human

intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

59. Plaintiff repeatedly requested the Defendant to stop texting his cell phone, however, the Defendant continued to send the text messages.

60. Defendant has admitted to calling and texting cell phones using an ATDS after that person asked for the calls to stop.

61. Plaintiff's conversations with the Defendant putting them on notice that they did not want more phone calls were ignored.

62. Defendant has records of at least one text message conversation with the Plaintiff.

63. Defendant has records of numerous text message conversations with the Plaintiff.

64. Defendant has made approximately one thousand fifty (1050) texts to Plaintiff's aforementioned cellular telephone number since in or about December of 2017 which will be established exactly once Defendant turns over their dialer records.

65. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robotexts.

66. Defendant has been sued in federal court where the allegations include: sending text messages to an individual using an ATDS after the individual asked for the texts to stop.

67. Defendant is a serial violator of the TCPA and the headline of a plethora of articles discussing this flagrant violation of federal laws.

68. By effectuating these unlawful phone texts, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

69. Defendant's aggravating and annoying text messages trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

70. Defendant's text messages harmed Plaintiff by wasting his time.

71. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant's phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

72. Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

73. Defendant's corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list.

74. Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

75. Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of text messages to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the texts.  Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

76. Defendant never had the Plaintiff's expressed consent for placement of telephone calls to her aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

77. None of Defendant's text messages placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

78. Defendant violated the TCPA with respect to the Plaintiff.

79. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

### COUNT I
### (Violation of the TCPA)

80. Plaintiff incorporates Paragraphs one (1) through seventy-nine (79).

81. Defendant willfully violated the TCPA with respect to the Plaintiff each time they texted the Plaintiff after he revoked his consent to be texted by them using an ATDS.

82. Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be texted by them using an ATDS or pre-recorded voice.

83. Defendant, Twilio, Inc. repeatedly placed non-emergency text messages to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

84. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

85. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Twilio, Inc., from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

Respectfully submitted,

s/ William "Billy" Peerce Howard, Esq.
William "Billy" Peerce Howard, Esq.
Florida Bar No.: 0103330
Billy@TheConsumerProtectionFirm.com
Amanda J. Allen, Esq.
Florida Bar No.: 0098228
Amanda@TheConsumerProtectionFirm.com
The Consumer Protection Firm
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
*Attorney for Plaintiff*
